COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

November 20, 2015

Brock E. Czeschin, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Steven L. Caponi, Esquire
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, DE  19801

Re:  *Tulum Management USA LLC v. Casten*
C.A. No. 11321-VCN
Date Submitted:  September 10, 2015

Dear Counsel:

This action is for alleged breaches of fiduciary duty and breaches of contract and seeks advancement and indemnification.  Plaintiffs George Polk ("Polk"), Tulum Management USA LLC ("Tulum"), and RED Capital Investments LP ("RED Capital") bring this action on behalf of nominal defendant RED Parent LLC ("RED Parent" or the "Company") against certain members of the RED Parent Board of Managers (the "Defendant Managers"), Recycled Energy Development LLC ("RED LLC") and RED Investment LLC ("Asset LLC," and collectively, the "Defendants").

## I. BACKGROUND

The Court here provides a brief summary of the relevant facts, which were set forth in greater detail in this Court's letter opinion issued on November 9, 2015.[1] Defendant Thomas Casten, RED Parent's Chairperson, and his son, Defendant Sean Casten, RED Parent's CEO (together, the "Castens"), control RED Parent.[2] Red Parent wholly owns RED LLC, which "conduct[s] . . . operating and development activities" in power projects, and Asset LLC, which is a "holding company for RED Parent's interests in various energy investments."[3] Polk, through his ownership and control of RED Capital and Tulum, holds a controlling share of the RED Parent "Preferred Membership Interests," but only a minority of RED Parent's total ownership.[4] Management of RED Parent is vested in a "Board of Managers," which runs the Company subject to the approval, for certain

---

[1] *Tulum Mgmt. USA LLC v. Casten*, 2015 WL 7269811, at *1-2 (Del. Ch. Nov. 9, 2015) (the "Letter Opinion"). This letter opinion draws extensively from the text of the Letter Opinion. Familiarity with the Letter Opinion is presumed.

[2] Defs.' Opening Br. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, Mot. to Stay Proceedings ("Defs.' Opening Br.") 5; Verified Compl. ("Compl." or "Complaint") ¶¶ 20-21.

[3] Compl. ¶¶ 18-19.

[4] Defs.' Opening Br. 4-5.

decisions, of the "Investment Committee."[5] Polk, pursuant to his authority to appoint two of the three Investment Committee members, may request a valuation of RED Parent's assets following a "material valuation event such as a material financing event, . . . a pattern of consistent deviation greater than 10% relative to the original pro forma financial projections, or a sale or acquisition of assets."[6] If the valuation, conducted in accordance with RED Parent's Operating Agreement (the "Operating Agreement"), concludes that a "Trigger Event" has occurred, Polk may take control of Asset LLC.[7]

Polk alleges that the Castens manipulated RED Parent's capital to further personal interests rather than those of the Company, which resulted in performance shortfalls justifying Polk's invocation of his right to request an independent valuation.[8] The Investment Committee selected Deloitte Transactions and

---

[5] Letter from Andrew J. Peach, Esquire Enclosing Am. and Restated Operation Agreement of RED Parent, LLC at Ex. 1 ("Operating Agmt.") § 5.1 (Aug. 6, 2015); Compl. ¶¶ 30, 48-49; Defs.' Opening Br. 5.
[6] Operating Agmt. § 1.47(b).
[7] *Id.* §§ 1.47(b), 3.8. One such Trigger Event occurs if RED Parent's assets are valued at less than the "accrued value of the preferred interest." Compl. ¶ 30; *accord* Operating Agmt. §§ 1.47, 3.8; Defs.' Opening Br. 7-8.
[8] Compl. ¶¶ 39-66.

Business Analytics LLP ("Deloitte") to conduct the valuation.[9] On May 29, 2015, after weeks of conflict regarding such details as whether Tulum is authorized to provide valuation inputs and remain as a party to the Deloitte engagement letter,[10] RED Parent filed an action in Illinois (the "Illinois Action")[11] to "prevent Polk from acting contrary to the Operating Agreement and to ensure that the valuation process was conducted in accordance with the Operating Agreement."[12] Polk contends that the purpose of the Illinois Action is to delay resolution of the dispute.[13] Amidst the controversy, Deloitte eventually withdrew its engagement, and the Investment Committee agreed to hire McGladrey LLP ("McGladrey") as a replacement independent valuation firm, though this relationship collapsed on July 16 for similar reasons.[14] On July 21, Polk filed the Complaint in Delaware, alleging two counts of breach of fiduciary duty, breach of contract, and breach of

---

[9] *Id.* ¶ 70; Defs.' Opening Br. 9.

[10] Compl. ¶¶ 71-79; Defs.' Opening Br. 9.

[11] First Amended Complaint for Declaratory Judgment, *RED Parent, LLC v. Polk*, No. 2015 CH 08634 (Cir. Ct. Ill. Jul 15, 2015); Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, or in the Alternative, Mot. to Stay Proceedings ("Pls.' Answering Br.") Ex. 2 ("Illinois Action Compl.").

[12] Defs.' Opening Br. 9.

[13] Compl. ¶ 80.

[14] *Id.* ¶¶ 82-85.

the implied covenant of good faith and fair dealing, and seeking indemnification, advancement, and fees on fees incurred in both the Illinois Action and the case at bar (the "Delaware Action").[15]

## II.  CONTENTIONS

Defendants argue that Delaware law requires that the Court stay the Delaware Action in favor of the first-filed Illinois Action.[16] Polk responds that the Delaware Action should proceed notwithstanding the pending Illinois Action because RED Parent failed in the Illinois Action to name as a defendant any party to the Operating Agreement, the Illinois and Delaware Actions involve separate parties and issues, and the Illinois Action is unable to "secure 'complete justice.'"[17]

---

[15] *Id.* ¶¶ 110-56. The Complaint seeks an injunction to prevent further mismanagement; a declaration that RED Parent and the Defendant Managers breached the Operating Agreement by engaging in the alleged mismanagement and obstructing the independent valuation, that any valuation incorporate both RED Parent and the Investment Committee, and that a Trigger Event (as defined by Section 1.47 of the Operating Agreement) has occurred; monetary damages; and litigation costs. *Id.* ¶¶ a-d.
[16] Defs.' Opening Br. 11.
[17] Pls.' Answering Br. 2.

### III.  ANALYSIS

A. *Procedural Posture*

Polk's claims divide into three categories: (1) advancement and indemnification, (2) valuation, and (3) fiduciary duties.[18]  The Letter Opinion denied Defendants' Motion to Stay in favor of the Illinois Action Polk's request for advancement of expenses.[19]  The remaining issues, therefore, are whether to proceed with or stay in favor of the Illinois Action Polk's valuation and fiduciary duty claims.

B. *Legal Standard*

Under Delaware law, the decision whether to stay or dismiss a Delaware action in favor of one first-filed in another jurisdiction is within the discretion of the Court.[20]  Well-settled Delaware policy favors resolution of "all claims arising from a common nucleus of operative facts . . . in the same court at the same time,"

---

[18] *Id.*; Teleconference Pls.' Mot. for Expedited Proceedings 5 (Aug. 6, 2015) (TRANSCRIPT).

[19] *Tulum*, 2015 WL 7269811, at \*5.

[20] *Brookstone P'rs Acq. XVI, LLC v. Tanus*, 2012 WL 5868902, at \*3 (Del. Ch. Nov. 20, 2012); *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970).

and a "preference" exists for "the first forum chosen."[21]   In exercising its

discretion, the Court considers whether "(i) there is a prior action pending in

another jurisdiction, (ii) that action involves similar parties and issues, and (iii) the

foreign court can render prompt and complete justice."[22]

The *McWane* doctrine favors granting a stay not only where the parties and

issues are identical, but also where there exists "substantial or functional identity"

between the two such that they "arise out of a common nucleus of operative

fact."[23]   This Court has found the requisite substantial identity where "the primary

---

[21] *Schnell v. Porta Sys. Corp.*, 1994 WL 148276, at *3-4 (Del. Ch. Apr. 12, 1994); *accord McWane*, 263 A.2d at 283 ("[L]itigation should be confined to the forum in which it is first commenced, and a defendant should not be permitted to defeat the plaintiff's choice of forum in a pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing . . . .").

[22] *Willis v. PCA Pain Ctr. of Va., Inc.*, 2014 WL 5396164, at *5 (Del. Ch. Oct. 20, 2014).   Whether the Court grants a stay depends on whether doing so would promote "comity and the necessities of an orderly and efficient administration of justice."  *McWane*, 263 A.2d at 283.

[23] *Davis Int'l, LLC v. New Start Grp. Corp.*, 2005 WL 2899683, at *2 (Del. Ch. Oct. 27, 2005) (internal quotation marks omitted); *accord Choice Hotels Int'l, Inc. v. Columbus-Hunt Park DR. BNK Investors, L.L.C.*, 2009 WL 3335332, at *7 (Del. Ch. Oct. 15, 2009) ("In any *McWane* analysis, . . . the parties and issues in the competing litigations rarely will be exactly identical.").   The doctrine, therefore, values "substance over form."  *Kurtin v. KRE, LLC*, 2005 WL 1200188, at *4 (Del. Ch. May 16, 2005).

claims and substantive issues in both actions" arise from the same factual nucleus.[24]   Here, the Court balances the lack of party and issue identity "against the possibility of conflicting rulings which could come forth if both actions were allowed to proceed simultaneously."[25]   Still, the Court considers "each case . . . on its own merits," and will not grant a stay "as a matter of right [solely] by reason of a prior action pending in another jurisdiction."[26]

C. *Application*

The parties agree that RED Parent filed the Illinois Action before Polk filed the Delaware Action.  At issue, therefore, is whether the parties and issues in the Delaware and Illinois Actions are sufficiently similar to justify staying the Delaware Action, and whether the Illinois court is capable of "render[ing] prompt and complete justice."[27]

---

[24] *Brookstone*, 2012 WL 5868902, at *6.
[25] *Choice Hotels*, 2009 WL 3335332, at *7.
[26] *McWane*, 263 A.2d at 283; *accord Willis*, 2014 WL 5396164, at *5.
[27] *Willis*, 2014 WL 5396164, at *5.

1. <u>The Parties in the Delaware and Illinois Actions are Functionally Identical</u>

The Illinois Action was brought solely by RED Parent against Polk; Tulum; Justin Goerke, who holds Preferred Membership Interests and is a member of the Investment Committee; and McGladrey. The Delaware Action was brought by Tulum, RED Capital, and Polk, on behalf of nominal defendant RED Parent, against the Castens, the remaining Defendant Managers—Damien Casten, Fred Brownson, Charles Bayless and Mark Gray—RED LLC, and Asset LLC.

The nominal identity of the parties, however, is not determinative;[28] the Court must also consider the substance of the distinctions.[29] Here, the corporate defendants named in Delaware and not Illinois, RED LLC and Asset LLC, are subsidiaries of RED Parent, the plaintiff in the Illinois Action.[30] This Court has "found parties to be substantially the same under *McWane* where related entities are involved but not named in both actions."[31] Further, the dispute in Illinois,

---

[28] *Davis*, 2005 WL 2899683, at *2.
[29] *FWM Corp. v. VKK Corp.*, 1992 WL 87327, at *1 (Del. Ch. Apr. 27, 1992).
[30] Compl. ¶ 1 n.1.
[31] *McQuaide v. McQuaide*, 2005 WL 1288523, at *4 (Del. Ch. May 24, 2005). Similarly, the fact that RED Capital, Tulum's investment vehicle, is named as a

though filed by RED Parent, involves the process by which Polk may gain control of Asset LLC. "[T]he Court cannot ignore the bigger picture and the clear, practical interrelationships between the actions."[32]

Neither does the fact that the Defendant Managers are named in the Delaware Action but not the Illinois Action preclude a finding of substantial party similarity. Defendants state in their Opening Brief that "[t]hese individual managers have stated that they would not object to compulsory service on them in Illinois for the purpose of joining them as counterclaim defendants in Illinois, to defend against the claims asserted against them in this Court,"[33] which provides a "basis for a finding that the parties in the litigations are sufficiently similar to meet the *McWane* standard."[34] In addition, the purpose for which the Defendant Managers are named in the Delaware Action—to hold them accountable for their alleged entrenchment and breach of contract and the covenant of good faith and

---

plaintiff in the Delaware Action but is excluded from the Illinois Action does not destroy the functional identity of the parties.

[32] *Kurtin*, 2005 WL 1200188, at *7.

[33] Defs.' Opening Br. 16.

[34] *Willis*, 2014 WL 5396164, at *6.

fair dealing by hindering the valuation process[35]—shares a common nucleus of operative fact with the Illinois Action in which RED Parent requests a declaratory judgment defining appropriate valuation procedures under the Operating Agreement.[36] The distinctions among the parties named in the Illinois and Delaware Actions, therefore, are insufficient to warrant denial of Defendants' *McWane* motion.

2. <u>The Issues in the Delaware and Illinois Actions are Functionally Identical</u>

First, the valuation claims asserted in the Delaware and Illinois Actions are identical. The plaintiffs in both actions request a declaration from the respective court (1) that the valuation initiated by the Investment Committee be conducted in accordance with the Operating Agreement, and (2) interpreting the Operating Agreement's provisions setting forth the valuation process.[37] The remaining issue,

---

[35] Compl. ¶¶ 119-43.

[36] Illinois Action Compl. ¶¶ 1-2.

[37] RED Parent's complaint in the Illinois Action requests a declaratory judgment that "any valuation conducted under the Operating Agreement must specifically comply with the terms of" the Operating Agreement, and that the terms of the Operating Agreement are as RED Parent suggests. *Id.* at 9. Polk, in the Delaware Action, seeks, among other relief, a declaration that "the independent valuation under the Operating Agreement must specifically comply with the valuation terms

therefore, is whether Polk's fiduciary duty claims are sufficiently dissimilar to warrant a denial of Defendants' Motion to Stay in favor of the Illinois Action.

The Illinois Action is comprised entirely of RED Parent's valuation claim. The Delaware Action, however, contains Polk's valuation claim, as well as his claims for breach of fiduciary duty for self-dealing and entrenchment, breach of contract, and breach of the implied covenant of good faith and fair dealing.[38] First, Polk characterizes the Defendant Managers' alleged self-dealing as a mere "overlapping [of] facts between the two cases."[39] Such conduct, however, if proven, may adversely impact the value of the Company, thereby affecting whether a subsequent valuation results in a Trigger Event.[40]

Further, while Polk attempts to paint the fiduciary duty claims as wholly distinct from the valuation claims,[41] the two originate from a common set of facts, and both involve interpretation of the Operating Agreement. As Polk alleges in the

---

articulated in the Operating Agreement," and that the terms of the Operating Agreement are as Polk suggests. Compl. ¶¶ b(iii)-(vi).

[38] Compl. ¶¶ 110-43.

[39] Pls.' Answering Br. 23 (alteration in original) (quoting *Raymond Revocable Trust v. MAT Five LLC*, 2008 WL 2673341, at *4 (Del. Ch. June 26, 2008)).

[40] Operating Agmt. §§ 1.47, 3.8.

[41] Pls.' Answering Br. 19.

Complaint, "[t]he overall impact of the Castens' mismanagement is substantial. Under the Castens' reign of error, all of the assets have yielded at least 20% less cash flows—and in some cases as much as 80% less cash flows—than originally projected."[42]  Therefore, not only do the Castens' and the other Defendant Managers' actions affect the independent valuation, they present potential breaches of the Operating Agreement, which is subject to the Illinois court's interpretation with respect to the valuation claims.[43]  Therefore, though the fiduciary aspect of the Castens' alleged mismanagement is distinct, as a matter of legal technicality, from the Illinois valuation claim, "both complaints [arise] from the same core conduct,"[44] that is, the Castens' alleged mismanagement resulting in RED Parent's underperformance and Polk's subsequent request for an independent valuation.

Finally, where the first-filed action is based on a contract claim and a subsequent Delaware action alleges statutory and fiduciary duty claims, the Court

---

[42] Compl. ¶ 64.

[43] *Id.* ¶ 65 ("Each of these actions not only violates the terms of the Operating Agreement, but also violates the Castens' fiduciary duties to their fellow members. They have chosen to fund their short-term financial payouts at the expense of maximizing profit for the Company.").

[44] *Citrin Hldgs. LLC v. Cullen 130 LLC*, 2008 WL 241615, at *3 (Del. Ch. Jan. 17, 2008).

may nonetheless stay the Delaware proceeding where it "is 'in substance and effect' the same as [the] earlier-filed . . . action."[45] For example, in *Glen Rose Petroleum Corp. v. Langston*, the court held that while the nature of the claims may differ and involve "slightly different time periods," the claims may nonetheless retain sufficient similarity where they relate to a common set of facts and "any breach of contract was a response to any fraud or breach of fiduciary duties."[46] The Delaware Action appears to be, "at its core,"[47] a controversy surrounding the Castens' alleged mismanagement as it relates to the value of RED Parent—the same core as the valuation claim alleged in the Illinois Action. As stated, to grant a stay under *McWane*, this Court need only find similarity in the

---

[45] *AT&T Corp. v. Prime Sec. Distribs., Inc.*, 1996 WL 633300, at *2 (Del. Ch. Oct. 24, 1996); *accord Glen Rose Petroleum Corp. v. Langston*, 2010 WL 2734621, at *2 (Del. Ch. July 7, 2010) ("[A]lthough the Texas petition involves a contract claim and the Delaware complaint involves fraud and fiduciary duty claims (among others), this does not mean the two actions are not substantially or functionally identical."); *Kurtin*, 2005 WL 1200188, at *4 ("Delaware courts have found . . . contract claims to be 'in substance and effect' the same as statutory and fiduciary duty claims.").

[46] 2010 WL 2734621, at *2.

[47] *Id.*

"primary claims and substantive issues in both actions . . . as a whole."[48] Accordingly, the issues alleged in the Delaware and Illinois Actions are sufficiently similar to grant Defendants' Motion to Stay in favor of the Illinois Action.

    3.  <u>The Illinois Court is Capable of Rendering Prompt and Complete Justice</u>

Polk argues that the Illinois Action will not result in prompt and complete justice because it names no party to the Operating Agreement as a defendant, and is not proceeding expeditiously.[49] First, the Illinois Action Complaint names as defendants Polk, Tulum, Goerke, and McGladrey. Polk and Goerke serve on the Investment Committee, and therefore have the right to request an independent valuation. The Illinois Action arises out of RED Parent's disagreement with Polk and Goerke regarding their scope of authority as Investment Committee members, namely, whether they are authorized to affect the scope of the independent valuation firm's engagement or provide valuation inputs. Therefore, the valuation dispute arises between RED Parent on one hand, and Polk and Goerke on the other,

---

[48] *Brookstone*, 2012 WL 5868902, at \*6.
[49] Pls.' Answering Br. 7-8.

all three of whom are named parties in the Illinois Action. The fact that RED Capital is not named as a party in the Illinois Action does not, without more, warrant a stay of the Delaware Action. The core of the dispute is whether Polk is entitled to control of Asset LLC, and Polk, as controller of Tulum and RED Capital, adequately represents RED Capital's interests.[50] Therefore, RED Capital's absence from Illinois is not a sufficient basis to deny a motion to stay the later-filed Delaware Action. Further, to the extent that Polk wishes to bring additional contract and fiduciary duty claims in Illinois, he may do so. As mentioned above, Defendants state in their Opening Brief that the Defendant Managers "would not object to compulsory service on them in Illinois for the purpose of joining them as counterclaim defendants in Illinois, to defend against the claims asserted against them in this Court."[51]

---

[50] *Willis*, 2014 WL 5396164, at *6 ("[W]hen the only party to a Delaware action that is not named in the foreign action is owned by a party to both actions, '[t]here is substantial or functional identity of all parties in both actions.'" (second alteration in original)).

[51] Defs.' Opening Br. 16.

Second, Polk alleges that the Illinois court is unable to provide prompt justice because RED Parent, in that case, has not sought expedited relief, and therefore "the Illinois court is unlikely to render a decision on the time frame that this Court has found appropriate."[52]  Defendants respond, however, that Polk is the primary impediment to adopting an expedited schedule in Illinois because he "actively dodg[ed] service" and delayed his filings.[53]  Further, in their Reply Brief, Defendants note that they intend to "promptly move for a summary disposition" upon Polk's appearance.[54]  Defendants not only filed a motion for summary judgment in the Illinois Action on October 9, 2015,[55] but also expressed willingness to enter into an expedited briefing schedule.[56]  While the parties present conflicting speculations regarding the potential schedule governing the Illinois Action,[57] the Court cannot conclude, based solely on Polk's allegations,

---

[52] Pls.' Answering Br. 8.

[53] Defs.' Reply Br. 4 n.1.

[54] *Id.*

[55] Letter from Steven L. Caponi, Esquire at 1 (Oct. 20, 2015).

[56] Letter from Steven L. Caponi, Esquire at 2 (Nov. 6, 2015).

[57] *Compare id.*, *and* Letter from Steven L. Caponi, Esquire (Oct. 20, 2015), *with* Letter from Brock E. Czeschin, Esquire (Oct. 20, 2015), *and* Letter from Brock E. Czeschin, Esquire (Nov. 5, 2015).

that the Illinois court is incapable of rendering prompt justice.[58]  The Illinois court,

therefore, is capable of rendering sufficiently prompt and complete justice to

warrant granting Defendants' Motion to Stay.[59]  This Court, however, retains

jurisdiction so that if, for any reason, the Illinois court is unable or unwilling to

rule on Polk's contract or fiduciary duty claims, or such claims are delayed to an

---

[58] Polk's effort to stay the Illinois Action in favor of the Delaware Action was unsuccessful.  Letter from Steven L. Caponi, Esquire at Ex. B (Oct. 20, 2015) (Illinois court's order denying the Illinois defendants' request for a stay and adopting a briefing schedule governing RED Parent's Motion for Summary Judgment).  The Delaware and Illinois Actions, therefore, have proceeded in parallel pending this Court's consideration of Defendants Motion to Stay.  Though this Court may be capable of resolving the matter more quickly, that does not mean that the Illinois Action will not be resolved "promptly."

[59] Polk's argument that, notwithstanding the *McWane* analysis, the Delaware Action should proceed on the grounds of *forum non conveniens* is unavailing.  Pls.' Answering Br. 21-25.  First, not only was the Illinois Action filed first, but RED Parent's principal place of business is in Illinois, the Operating Agreement was negotiated in Illinois, and the Castens reside in Illinois.  Defs.' Opening Br. 1-2; Compl. ¶¶ 17-22.  Second, *McWane* limits application of the *Cryo-Maid* factors governing *forum non conveniens* analysis to those situations "where (1) no other action is pending elsewhere between the same parties involving the same issues, or (2) such other pending action was filed subsequently to the Delaware action." *McWane*, 263 A.2d at 284; *accord In re Asbestos Litig.*, 2012 WL 1980414, at *2 (Del. Super. May 16, 2012) ("*McWane* is applied when there is a case pending in another jurisdiction and *Cryo–Maid* is applied when no other case is pending.").  Accordingly, *McWane* provides the appropriate framework within which to address Defendants' Motion to Stay.

extent resulting in prejudice to Polk, Polk may move to lift the stay and proceed in

Delaware.[60]

## IV. CONCLUSION

For the reasons above and except for the advancement and indemnification

claims as addressed in the Letter Opinion, the Court denies Defendants' Motion to

Dismiss in favor of the Illinois Action, but grants Defendants' Motion to Stay in

favor of the Illinois Action as to the valuation and fiduciary duty claims, and

retains jurisdiction over the Delaware Action. The stay may be lifted as the

circumstances may require.

---

[60] *Welbilt Corp. v. Trane Co.*, 2000 WL 1742053, at *4 (Del. Ch. Nov. 17, 2000) (granting a stay but retaining jurisdiction in case "the Texas court should ultimately conclude that it is unable to exercise personal jurisdiction over the Welbilt Parties or if the decision on that matter is so delayed as to cause substantial prejudice to the Welbilt Parties."); *id.* ("[I]f the progress of the Texas Action is unduly delayed by the resolution of this issue, the Welbilt Parties are free to move to lift the stay if, as a result, they are prejudiced."); *Landesbank Baden-Wurttemberg v. Walton Seattle Mezz Hldgs. VI-B, L.L.C.*, 2013 WL 1286192, at *11 (Del. Ch. Apr. 1, 2013) ("Given the Plaintiff's allegations that the streamlined nature of the receivership action may cause the Washington court to refrain from ruling on these issues, I have decided to order a stay and retain jurisdiction, so that this matter may proceed in Delaware if the Washington court refrains from acting on this matter.").

**IT IS SO ORDERED.**

Very truly yours,

*/s/ **John W. Noble***

JWN/cap
cc:   Register in Chancery-K